IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Vernia Louise Ritter Rivers, *Registered Nurse*, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 3:11-194-MBS-PJG |
| vs. | ) ) ) | **ORDER AND OPINION** |
| Shirley Bannister, *RN Nurse Executive*; Constance Tucker, *RN Acting Director of Nursing*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff Vernia Louise Ritter Rivers ("Plaintiff") is a former employee of the South

Carolina Department of Mental Health ("SCDMH"). Plaintiff, proceeding pro se, filed a

complaint against Shirley Bannister and Constance Tucker ("Defendants")[1] on January 24, 2011,

alleging violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.;

Americans with Disabilities Act (ADA), 42 U.S.C. §§ 1201, et seq.; and the Age Discrimination

in Employment Act (ADEA), 29 U.S.C. §§ 621, et seq. In accordance with 28 U.S.C. § 636(b)

and Local Rule 73.02, D.S.C., the within action was referred to United States Magistrate Judge

Paige J. Gossett for pretrial handling. This matter is before the court on the Defendants' motion

to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## Background

Plaintiff was formerly employed as a nurse by the South Carolina Department of Mental

Health at some time between 2008 and 2009. Defendant Bannister, then Nurse Executive, and

---

[1] As the Magistrate Judge noted in her Report, some confusion exists as to whether SCDMH is a defendant in this matter. A summons was not issued for SCDMH. However, Defendants address potential claims against SCDMH and Plaintiff, in various filings, states that she intended to name SCDMH as a defendant. To the extent that Plaintiff named SCDMH as a defendant and it waived service, the court will address those claims herein.

Defendant Tucker, then Acting Director of Nursing, both served as supervisors to Plaintiff. Plaintiff alleges that she was subject to ongoing harassment at the hands of Defendants between December 2008 and May 2009. Plaintiff alleges Defendants created a hostile work environment that ultimately caused Plaintiff to suffer various mental and physical ailments, including anxiety and depression, forcing her into disability retirement. Furthermore, Plaintiff appears to allege that she was transferred to another unit by Defendants as retaliation for her complaints against them. Plaintiff filed charges against Defendants with the South Carolina Human Affairs Commission ("SCHAC") and the United States Equal Employment Opportunity Commission ("EEOC") based on alleged violations of Title VII, the ADA[2] and the ADEA. On July 30, 2010, the SCHAC, having investigated the charge, found "no cause" and issued Plaintiff a notice of right to sue. On September 16, 2010, the EEOC evaluated the same charge and issued a notice of right to sue specifying that a lawsuit in federal or state court must be filed within 90 days of Plaintiff's receipt of the notice. In December 2010, Plaintiff suffered numerous traumatic events, including the death of her mother and the hospitalization of her companion, which she alleges prevented her from filing the instant lawsuit sooner.

On January 24, 2011, Plaintiff filed the instant complaint. On June 28, 2011, Defendants filed a motion to dismiss arguing that 1) Plaintiff fails to allege sufficient facts to make her Title VII claim plausible; 2) Plaintiff's claims are barred by the statute of limitations; 3) Defendant supervisors are not liable in their individual capacities under Title VII, ADA and ADEA; and 4) the state defendant is immune from liability under the Eleventh Amendment as to the ADA and

---

[2] Neither Plaintiff, Defendant, nor Magistrate Judge specifies whether Plaintiff's ADA claims are being brought under Title I or Title II of the ADA. Title I of the ADA prohibits discrimination on the basis of disability in regard to . . . terms, conditions and privileges of employment. Title II of the ADA states that no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits or the services, programs or activities of a public entity (including a state agency), or be subjected to discrimination by any such entity. As such, the court will consider the viability of Plaintiff's claims under Title I and Title II of the ADA herein.

ADEA claims.  On October 21, 2011, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendants' motion to dismiss be granted. Plaintiff filed objections to the Report and Recommendation ("Plaintiff's Objections") on November 4, 2011.

**Discussion**

***Standard of Review***

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility for making a final determination remains with this court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).  To the extent that Plaintiff presented objections to the Magistrate Judge's findings regarding protection from liability for the Defendant supervisors and immunity from liability for SCDMH, the court conducts a de novo review.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombley, 550 U.S. 544, 556, 570 (2007)).  In Constantine v. The Rectors and Visitors of George Mason University, 411 F.3d 474, 490 (4th Cir. 2005), the Fourth Circuit held that Eleventh Amendment immunity does not limit a federal court's subject-matter jurisdiction because immunity is waivable.  However, if a state defendant, having been brought into federal court to defend a claim against him, asserts that he is immune from liability based on the Eleventh Amendment, the court must consider his

immunity defense before considering any other arguments pursuant to Rule 12(b)(6).

### Claims against SCDMH under ADEA

The Magistrate Judge recommended that Plaintiff's ADEA claims against SCDMH be dismissed because SCDMH is a state agency and the state has immunity against ADEA claims under Kimel v. Florida Bd. of Regents, 528 U.S. 62 (2000). In Kimel, the Supreme Court held that Congress had not validly abrogated state immunity under the Eleventh Amendment in the passage of the ADEA because the ADEA is not a valid exercise of Congress's power under § 5 of the Fourteenth Amendment.[3]

Plaintiff has inserted numerous paragraphs in her Objections that speak generally about state immunity. Plaintiff states that as of 2003, most states had waived their immunity at various degrees at the state and local levels. Plaintiff also cites to the Supreme Court's decision in Lapides v. Bd. of Regents of the University System of Georgia, 535 U.S. 613 (2002), where the court ruled that the state could not claim Eleventh Amendment immunity when it had voluntarily removed the case to federal court. Plaintiff has also included a paragraph in her Objections that discusses Congress's power to abrogate state immunity through § 5 of the Fourteenth Amendment.

Plaintiff's general references to state immunity are without merit. Plaintiff does not present arguments challenging the applicability of Kimel or otherwise discuss state sovereign immunity as it relates to the ADEA. The Supreme Court in Kimel clearly held that Congress had not validly abrogated state immunity under the Eleventh Amendment in the passage of the ADEA. Because SCDMH, as a state agency, is immune from liability under the ADEA, the court agrees with the Magistrate Judge's finding that Plaintiff's ADEA claim against SCDMH should

---

[3] The Supreme Court mentioned that its decision does not foreclose the possibility for recovery under state age discrimination statues and cited to corresponding statutes from almost every state, including South Carolina. See S.C. Code Ann. §§ 1-13-10 et seq. (1986 and Cum. Supp. 1998).

be dismissed.

***Claims against SCDMH under ADA***

The Magistrate Judge recommended that Plaintiff's ADA claim against SCDMH be dismissed because the Supreme Court in <u>Bd. Of Trustees of the University of Alabama v. Garrett</u>, 531 U.S. 356 (2001), held that Congress had not validly abrogated state immunity in the passage of the ADA. In her objections, Plaintiff made a number of general references to state immunity as discussed above. She also included a summary of the <u>Garrett</u> decision.

Plaintiff's Objections fail to challenge <u>Garrett</u> or its applicability to her case. The Supreme Court's decision in <u>Garrett</u> forecloses suits against states under Title I of the ADA. Accordingly, Plaintiff's claims against SCDMH under Title I of the ADA should be dismissed.

However, the question of whether <u>Garrett</u> forecloses suits against a state under Title II of the ADA was not addressed by the parties or the Magistrate Judge. As mentioned earlier, Plaintiff does not specify whether her ADA claims are brought under Title I or II of the ADA. To the extent that Plaintiff alleged any claims under Title II of the ADA, the court will consider how <u>Garrett</u> should be applied in the context of employment discrimination claims brought under Title II of the ADA.

The Supreme Court explicitly stated in <u>Garrett</u> that its ruling was applicable to Title I of the ADA only and that it made no ruling as to the validity of Title II. The Court also described a circuit split as to whether employment discrimination claims can properly be brought under Title II in the first place, in light of the fact that Title I already provides for employment discrimination claims. <u>Compare</u> <u>Zimmerman v. Oregon Dept. of Justice</u>, 170 F.3d 1169 (9th Cir. 1999), <u>with</u> <u>Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.</u>, 133 F.3d 816 (11th Cir. 1988). The Court did, however, provide lower courts with a framework to analyze whether

5

Congress has validly abrogated state immunity in the passage of a statute. First, courts must analyze whether Congress has unequivocally expressed the intent to abrogate state immunity from suit. The Supreme Court indicated that the ADA as a whole fulfills this requirement. Next, the Supreme Court clarified its "congruence and proportionality test," used to determine whether Congress acted within the scope of its § 5 power under the Fourteenth Amendment. Under the three-part "congruence and proportionality test," a court must: 1) identify the constitutional right that Congress sought to enforce when it enacted the statute in question, 2) determine whether Congress identified a history and pattern of unconstitutional conduct by the states; and if so, 3) analyze whether the statute is an appropriate, congruent and proportional response to the history and pattern of unconstitutional treatment. Garrett, 531 U.S. at 365, 374. Applying these factors to employment discrimination claims under Title I of the ADA, the Court held that there was insufficient evidence to show a history and pattern of unconstitutional state discrimination against disabled persons in the context of employment.

Since Garrett, the Supreme Court has held that Title II is a valid abrogation of state immunity under the Eleventh Amendment in the specific context of access by disabled persons to courts and the right of disabled persons to be free from actual Fourteenth Amendment violations. See Tennessee v. Lane, 541 U.S. 509, 518 (2004); U.S. v. Georgia, 546 U.S. 151, 159 (2006) (holding that the specific failure in that case to accommodate a paraplegic inmate in prison could be an actual violation of § 1 of the Fourteenth Amendment). In Constantine, 411 F.3d at 490, the Fourth Circuit held that Title II is also a valid abrogation of state immunity in the context of disabled persons' access to higher education. The Fourth Circuit, interpreting Garrett, noted that it is more likely that disability discrimination in the context of a State's operation of public education programs will be unconstitutional than discrimination in the context of employment.

A district court within the Fourth Circuit applying <u>Constantine</u> stated that although the Supreme Court in <u>Lane</u> found that a pattern of state discrimination against the disabled that was clear beyond peradventure in the provision of public services, the Court in <u>Garrett</u> found only minimal evidence of unconstitutional state discrimination in the context of employment.  <u>Sarkissian v. West Virginia University Board of Governors</u>, No. 1:05-cv-144, 2007 WL 1308978, at *7-8 (N.D. W.Va. May 3, 2007).  Accordingly, the district court permitted an employment discrimination case brought by a medical resident to go forward, holding that a medical residency position is more akin to a program of higher education than an employment position, and thus <u>Constantine</u> controls and the state is not immune from suit under Title II of the ADA in this context.  <u>Id.</u>

The court acknowledges the circuit split on the issue of whether employment discrimination claims can properly be asserted under Title II of the ADA.  However, based on Fourth Circuit precedent where employment discrimination claims have been permitted under Title II of the ADA, albeit without much analysis, the court assumes without deciding that Title II encompasses employment discrimination claims against public entities.  <u>See</u> <u>Doe v. University of Maryland Medical System Corporation</u>, 50 F.3d 1261 (4th Cir. 1995); <u>Burke v. Commonwealth of Virginia</u>, No. 96-1709, 1997 WL 303349 (4th Cir. June 6, 1997);  <u>Rogers v. Department of Health and Environmental Control</u>, 174 F.3d 431 (4th Cir. 1999).

However, the inquiry does not end there, because the court must still determine whether Title II is a valid abrogation of state immunity under the Eleventh Amendment in the context of employment discrimination claims.  In order to analyze this under the framework provided by the Supreme Court, the court must determine whether Congress identified a history and pattern of unconstitutional conduct by the states in the context of employment discrimination.  The

Supreme Court already analyzed this precise question in <u>Garrett</u> in order to determine whether Title I was a valid abrogation of state immunity, noting that the legislative record of the ADA fails to shows that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled. <u>See</u> 531 U.S. at 964-66; <u>see also</u> <u>Clifton v. Georgia Merit System</u>, 478 F.2d 1357, 1368 (N.D. Ga. 2007). This determination is equally applicable to the analysis of employment discrimination claims under Title II of the ADA; therefore, Title II employment discrimination claims fail the second prong of the congruence and proportionality test. Although the court recognizes that Title I and II of the ADA have different remedies and thus the third prong of the congruence and proportionality test may have different applications, the court does not reach this prong unless the second prong (pattern of unconstitutional state action) is fulfilled.

A plaintiff should not be permitted to circumvent the holding of <u>Garrett</u> immunizing states from employment discrimination claims brought pursuant to Title I by filing suit under Title II. <u>Clifton</u>, 478 F.2d at 1368. The Fourth Circuit alluded to the idea that states may be immune to Title II employment discrimination claims in <u>Constantine</u> stating that "it is more likely that disability discrimination in the context of a State's operation of public education programs will be unconstitutional than discrimination in the context of public employment." Plaintiff's hostile work environment claim does not encompass access to higher education as permitted in <u>Constantine</u>; it is a discrimination claim in the context of public employment. Accordingly, to the extent that Plaintiff seeks to assert an ADA employment discrimination claim under Title II of the ADA, SCDMH is immune to the claim under this particular set of facts and the claim is dismissed.

***Claims Against Defendants in their Individual Capacities under ADEA & ADA***

The Magistrate Judge found that Plaintiff's ADEA and ADA claims against Defendants in their individual capacities as supervisors failed as a matter of law under Fourth Circuit precedent. In <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 510-11 (4th Cir. 1994), the Fourth Circuit held that supervisors are not subject to suit individually under the ADEA, because they are not considered "employers" under the statute. In <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462, 472 (4th Cir. 1999), the Fourth Circuit held that since the ADA (Title I) expressly incorporated remedies available under Title VII and both statutes define employer in pertinent part as "a person engaged in an industry affecting commerce who has fifteen or more employees," an ADA claim, like a Title VII claim, does not permit an action against individual supervisors. The Fourth Circuit also stated that claims alleged under Title II of the ADA could not be brought against individuals because individuals are not "public entities" under the statute. <u>Id.</u> at 471.

Plaintiff's Objections recount the alleged harassment she faced by the Defendant supervisors. Furthermore, Plaintiff contends that the harassment was purposeful and willful and that harassers should be held liable.

Plaintiff's objections fail to present any argument as to why Fourth Circuit precedent is inapplicable here. Pursuant to Fourth Circuit cases cited by the Magistrate Judge, claims against supervisors in their individual capacities under the ADEA and ADA are prohibited. Accordingly, Plaintiff's claims against Defendants in their individual capacities under the ADEA and ADA are dismissed.

***Claims Under Title VII***

The Magistrate Judge recommended dismissing Plaintiff's Title VII claims on the basis that Plaintiff included no factual allegations in her complaint that she suffered discrimination

based upon her membership in a protected class under Title VII. Plaintiff does not specify in her filing to which protected class under Title VII she belongs nor does she allege that she was discriminated against because of her membership in the class.

The court agrees with the Magistrate Judge. Since Plaintiff does not state how the discrimination she faced was caused by her membership in a protected class under Title VII, Plaintiff fails to allege sufficient facts to make her Title VII claim plausible.

In a footnote, the Magistrate Judge also indicated that Plaintiff's Title VII claims were time-barred and that Plaintiff has not made the extraordinary showing required for equitable tolling. Plaintiff does not address this issue in her objections; however, in her response to Defendants' motion to dismiss, Plaintiff explains that she missed the 90-day filing deadline due to her mental illnesses and as a result of traumatic events that occurred in December 2010, including the death of her mother and the hospitalization of her companion.

The Supreme Court has held that under certain circumstances, Title VII's ninety-day limitations period may be equitably tolled. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). The Fourth Circuit has held that equitable tolling is available in those rare circumstances where due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would limit. Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003). To invoke equitable tolling, Plaintiff must be able to show 1) extraordinary circumstances; 2) beyond his or her control; and 3) that prevented him or her from filing on time. Id. District courts within the Fourth Circuit have recognized mental incapacity as a ground for equitable tolling when the incapacity was profound enough that the plaintiff was institutionalized or adjudged incompetent. See Milam v. Nicholson, No. 5:07-609, 2009 WL 159302 (S.D. W.Va. January 20, 2009).

The court agrees with the Magistrate Judge's findings that Plaintiff's Title VII claims are time-barred, because they were filed more than one month after the 90-day deadline had lapsed and equitable tolling is not applicable here. Plaintiff has not alleged sufficient extraordinary circumstances. For both of the above-mentioned reasons, the court dismisses Plaintiff's Title VII claims.

## Conclusion

After a thorough review of the Report and Recommendation, the Plaintiff's Objections, the record in its entirety, and the applicable law, the court concurs with the Magistrate Judge's findings. The court adopts the Report and Recommendation and incorporates it herein by reference. Defendants' motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

February 13, 2012
Columbia, South Carolina